UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD DERYKE,

               Plaintiff,

v.

UNKNOWN SCHAFER,

               Defendant.

_____/

Case No. 1:23-cv-191

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims against Defendant Schafer: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's personal capacity Eighth Amendment claim; and (4) Plaintiff's personal capacity Fourteenth Amendment claims. Plaintiff's personal capacity First Amendment retaliation claim for damages

against Defendant Schafer remains in the case. The Court will also deny Plaintiff's request for the appointment of counsel. (ECF No. 1, PageID.5–6.)

**<u>Discussion</u>**

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corrections Officer Unknown Schafer in his official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on August 22, 2022, Defendant Schafer called him to the office and handed him "a sheet of paper that said 'Sanitation.'" (*Id.*, PageID.3.) Defendant Schafer told Plaintiff to read a highlighted part, which stated: "Soiled mop heads and laundry identified with a BIOHAZARD label shall be laundered separately from other soiled laundry in East Side Q[uarter] M[aster]." (*Id.*) Plaintiff asked Defendant Schafer for a copy of the document, and Defendant Schafer told Plaintiff that he would make a copy after Counselor Jones (not a party) was "done taking care of counselor duties." (*Id.*)

Three hours later, Plaintiff noticed that Jones was no longer in the office and went to Defendant Schafer to remind him that he had asked for a copy of the sanitation document. (*Id.*) Defendant Schafer "told Plaintiff yes (indicating give him a few minutes), and Plaintiff thanked him and returned back to his job description duties." (*Id.*) Plaintiff contends that Defendant Schafer "appeared agitated, and angry thinking Plaintiff was using it for purpose of putting paperwork on Defendant C/O Schafer." (*Id.*)

"While Plaintiff was sitting down," Defendant Schafer "stormed from the [o]ffice area and asked in a loud voice and hostile tone and gesture, why Plaintiff wanted a copy of the

[m]emorandum." (*Id.*) Plaintiff responded that he wanted a copy "merely for future reference." (*Id.*, PageID.4.) Defendant Schafer "became irate[,] telling Plaintiff he was fired, and was going to write poor 363 [r]eports (which is a Prisoner Work Assignment Evaluation sheet for a prisoner's work performance, and explicitly utilized by the Department of Corrections for classification, parole guidelines scoring, etc.)." (*Id.*) Defendant Schafer also said that he would be "calling Classification to fire Plaintiff because he thought Plaintiff was making a grievance about him, and ultimately manufactured a false 363 claiming [Plaintiff] did not perform his job duties." (*Id.*)

After the incident, Plaintiff went to Jones and "made a verbal grievance about it (fully explaining everything that transpired)." (*Id.*) Jones told Plaintiff, "off record," that "Officer Schafer was worried because he thought he was under investigation for something, and didn't need anymore heat." (*Id.*) Plaintiff avers that he does not know what Jones was referencing, "but it was certainly a matter of concern that Plaintiff was construed as making a complaint/grievance." (*Id.*) Ultimately, Plaintiff received two "bogus 363s," and was "abruptly terminated from assignment after four (4) days of work." (*Id.*) He alleges that the negative 363s in his file "will have an adverse impact on his parole guidelines and block reports considered by the parole board." (*Id.*)

Based on the foregoing, Plaintiff asserts: (1) a First Amendment retaliation claim; (2) an Eighth Amendment deliberate indifference claim; and (3) Fourteenth Amendment due process and equal protection claims. Plaintiff seeks declaratory relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.5.) He also requests injunctive relief in the form of having the 363s expunged and removed from his file. (*Id.*) Additionally, Plaintiff requests the appointment of counsel. (*Id.*, PageID.5–6.)

## II.    Request for Appointment of Counsel

Plaintiff has requested the appointment of counsel to represent him in this matter. (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-*

*Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.5–6) will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

Plaintiff has sued Defendant Schafer in his official and personal capacities. (ECF No. 1, PageID.2.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*,

438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks declaratory and injunctive relief, as well as damages, in this action. (ECF No. 1, PageID.5.) Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Official capacity actions seeking injunctive relief, however, constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined at

DRF, where he avers that Defendant Schafer is employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff is now incarcerated at SMT, and Defendant Schafer is not employed at that facility. Plaintiff, therefore, cannot maintain official capacity claims for declaratory and injunctive relief against Defendant Schafer.[1]

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendant Schafer will be dismissed.

### B.    Personal Capacity Claims

#### 1.    First Amendment Retaliation

Plaintiff contends that Defendant Schafer retaliated against him, in violation of his First Amendment rights, by issuing the "bogus 363[s]" and ultimately having Plaintiff terminated from his job assignment. (ECF No. 1, PageID.5.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken

---

[1] To the extent Plaintiff seeks declaratory and injunctive relief against Defendant Schafer in his personal capacity, such claims will also be dismissed for the reasons set forth above.

against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Here, Plaintiff alleges that he wanted a copy of the sanitation guidelines for reference, and that Defendant Schafer interpreted his request as Plaintiff making a grievance or "putting paperwork" on him. (ECF No. 1, PageID.3–4.) At this stage, Plaintiff has sufficiently alleged that he engaged in protected activity for purposes of a retaliation claim.

Plaintiff has also alleged that Defendant Schafer acted adversely by issuing the allegedly false 363s and having Plaintiff terminated from his job assignment. *See Bradley v. Conarty*,

No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018) (noting that "the loss of a prison job can in some circumstances be deemed an adverse action for purposes of retaliation claim"). Finally, Plaintiff's allegations suggest that Defendant Schafer took these actions because he thought that Plaintiff intended to "put[] paperwork" and "was making a grievance" about him. (ECF No. 1, PageID.3–4.) Furthermore, Plaintiff alleges that after the incident, Counselor Jones told Plaintiff that Defendant Schafer "was worried because he thought he was under investigation for something, and didn't need any more heat." (*Id.*, PageID.4.) Although Plaintiff has by no means proven retaliation, taking Plaintiff's allegations as true and in the light most favorable to him, the Court may not dismiss on initial review Plaintiff's First Amendment retaliation claim against Defendant Schafer.

### 2.    Eighth Amendment

Plaintiff contends that Defendant Schafer's "arbitrary termination" of Plaintiff from his job assignment was "with deliberate indifference" to his rights, in violation of the Eighth Amendment. (ECF No. 1, PageID.5.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See Ivey*, 832 F.2d at 955. "[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith v. Sapp,* Nos. 97–5642, 97–5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) (citing *Rhodes,* 452 U.S. at 347–49) (discussing that state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, much less punishments that inflict unnecessary and wanton pain). As a consequence, Plaintiff fails to state an Eighth Amendment claim, and such claim will be dismissed.

### 3.      Fourteenth Amendment Claims

#### a.      Due Process—Termination from Job

Plaintiff suggests that Defendant Schafer violated his Fourteenth Amendment rights by issuing the negative 363 reports and having Plaintiff terminated from his job assignment. The Fourteenth Amendment protects an individual from deprivation of life, liberty[,] or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant

upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Plaintiff's claim fails at the first step, however, because "no prisoner has a constitutional right to a particular job or to any job." *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment); Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *See Carter v. Tucker*, 69 F. App'x 678, 80 (6th Cir. 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of his job assignment did not trigger a right to due process, and his Fourteenth Amendment due process claim regarding his termination will be dismissed.

### b.    Due Process—Impact on Future Parole Prospects

Plaintiff suggests that Defendant Schafer has violated his Fourteenth Amendment due process rights by issuing the false 363 reports, which are now part of Plaintiff's prison file. Plaintiff contends that these bogus reports "will have an adverse impact on his parole guidelines and block reports considered by the parole board." (ECF No. 1, PageID.4.) Plaintiff essentially asserts that Defendant Schafer's actions have interfered with his future parole prospects in violation of the Fourteenth Amendment. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural

11

due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a

mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Thus, Defendant Schafer's alleged interference with Plaintiff's future parole prospects does not implicate a federal right. Accordingly, Plaintiff's Fourteenth Amendment due process claim related to interference with his future parole prospects will be dismissed.

###     c.     Equal Protection

Plaintiff also contends that his Fourteenth Amendment equal protection rights were violated when he was terminated from his job assignment. (ECF No. 1, PageID.5.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440–41. However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's claim does not implicate a fundamental right, as he does not have a "constitutional right to a particular job or any job." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Plaintiff also does not allege that he is a member of a suspect class or that Defendants discriminated against him because

he was a member of a suspect or quasi-suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

Plaintiff's claim, therefore, is the prototypical "class of one" equal protection claim "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court has refused to recognize "class of one" claims in the public employment context. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606–07 (2008); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 442 (6th Cir. 2012) (acknowledging that *Engquist* prohibits "class of one" claims in the public employment context— even in that prison employment case—but concluding that Davis raised a traditional class-based discrimination claim, not a "class of one" claim); *Carter v. Mich. Dep't of Corr.*, No. 1:13-cv-37, 2013 WL 3270909, at *13 (W.D. Mich. Jun. 27, 2013) ("Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist*."); *Johnson v. Grayson Cnty. Det. Ctr.*, No. 4:21-cv-P13-JHM, 2021 WL 3025452, at *3 (W.D. Ky. Jul. 16, 2021) (collecting cases and noting that "[s]everal courts have extended the reasoning in *Engquist* to the prison context"); *Brown v. Partin*, No. 1:20-CV-235-TRM-CHS, 2020 WL 5077037, at *2 (E.D. Tenn. Aug. 27, 2020) ("[A] 'class of one' theory . . . is not available in the context of prison employment.").

Moreover, the threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

14

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Here, Plaintiff's complaint is devoid of any allegations suggesting that Defendant Schafer treated him differently from any similarly situated inmate. Plaintiff, therefore, cannot maintain a Fourteenth Amendment equal protection claims against Defendant Schafer, and such claim will be dismissed.

## Conclusion

The Court will deny Plaintiff's request for the appointment of counsel. (ECF No. 1, PageID.5–6.) Moreover, having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss the following claims against Defendant Schafer for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory and injunctive relief; (3) Plaintiff's personal capacity Eighth Amendment claim; and (4) Plaintiff's personal capacity Fourteenth Amendment claims. Plaintiff's personal capacity First Amendment retaliation claim for damages against Defendant Schafer remains in the case.

An order consistent with this opinion will be entered.


Dated:   _____March 20, 2023_____          _____/s/ Robert J. Jonker_____
                                              Robert J. Jonker
                                              United States District Judge